**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**UNITED STATES OF AMERICA :**
**:**
**v. : NO.: 12-498-LDD**
**:**
**YIJIA ZHANG :**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COUNT II OF THE INDICTMENT**

**BOYLE LITIGATION**

**Dennis E. Boyle, Esquire**
Supreme Court I.D. No. 49618

**K. Edward Raleigh, Esquire**
Supreme Court I.D. No. 312229
4660 Trindle Road, Suite 200
Camp Hill, PA 17011
Phone: (717) 737-2430
Fax: (717) 737-2452
Email: deboyle@boylelitigation.com
keraleigh@boylelitigation.com

Counsel For: Yijia Zhang

Dated: September 19, 2013

# TABLE OF CONTENTS

**Page**:

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. QUESTION PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV. ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

A. This Court should dismiss Count II of the Indictment because the confidential company documents downloaded by Mr. Zhang do not constitute *goods, wares, merchandise, securities, or money* within the NSPA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

1. The NSPA's language, legislative history, and purpose as well as judicial precedent on its meaning dictate that it requires that the *goods, wares, or merchandise* be tangible.. . . . . . . . . . . . . . . . . . . . . . . 5

2. The confidential company files in this case were not tangible property within the meaning of the NSPA because the files were at all times electronic... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

3. This Court should dismiss Count II of the Indictment because the Government has not alleged that any market exists for the confidential company information.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

V. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**TABLE OF AUTHORITIES**

**Statutes:** **Page(s):**

18 U.S.C. § 1030(a)(5)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 1030(c)(4)(A)(i)(I). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 2314. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 5, 7, 12

18 U.S.C. §1030.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Rules:**

Fed. R. Crim.P. 12(b)(3)(B).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**Cases:**

*Dowling v. United States*, 473 U.S. 207, 213 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6-8

*In re Vericker*, 446 F.2d 244, 248 (2d Cir. 1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*McNally v. United States*, 483 U.S. 350 (1987).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Russell v. United States*, 369 U.S. 749, 760-61 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Agrawal*, 2013 WL 3942204 (2d Cir. Aug. 1, 2013).. . . . . . . . . . . . . . . . . . . . 9, 10

*United States v. Aleynikov*, 676 F. 3d 71, 79 (2d Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 9

*United States v. Batti*, 631 F.3d 371, 366-67 (6th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Brown*, 925 F.2d 1301, 1307 (10th Cir. 1991).. . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Brown*, 925 F.2d 1301, 1307 (10th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Hsu*, 155 F.3d 189, 194-95 (3d Cir. 1998).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Kwan*, No. 02 CR 241, 2003 WL 22973515, at *4 (S.D.N.Y. Dec. 17, 2003). . . . . . . . . . . 12

*United States v. Martin*, 228 F.3d 1, 13 (1st Cir. 2000).. . . . . . . . . . . 7

*United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002). . . . . . . . . . . 4

*United States v. Seagraves*, 265 F.2d 876, 880 (3d Cir. 1959). . . . . . . . . . . 4, 5, 12

*United States v. Smith*, 686 F.2d 234, 241 (5th Cir. 1982). . . . . . . . . . . 5

*United States v. Stafford*, 136 F.3d 1109, 1115 (7th Cir. 1998) . . . . . . . . . . . 6, 7

*Williams v. United States*, 458 U.S. 279, 290 (1982). . . . . . . . . . . 6

**Other Authorities:**

Black's Law Dictionary, 4th ed. 823 (1951).. . . . . . . . . . . 4

H.R. Rep. No. 788, 104th Cong., 2d Sess. 6-7 (1996), *reprinted in* 1996 U.S.C.C.A.N. 4021, 4025. . . . . . . . . . . 8

S. Rep., No. 104-359, 1996 WL 497065 (Leg. Hist.). . . . . . . . . . . 8

## I. INTRODUCTION:

The Defendant, Yijia Zhang, submits this Memorandum in support of his Motion to Dismiss Count II of the Indictment. Count II alleges that Mr. Zhang violated the National Stolen Property Act, 18 U.S.C. § 2314, which requires the property in question to be tangible and ordinarily subject to commerce. Because the Indictment alleges only that Mr. Zhang stole "confidential company files" by download and upload from a computer, the property was not tangible and not ordinarily a subject of commerce. Therefore, Count II of the Indictment should be dismissed.

## II. QUESTION PRESENTED:

A. WHETHER THIS COURT SHOULD GRANT DEFENDANT'S MOTION TO DISMISS COUNT II BECAUSE INTANGIBLE, INTELLECTUAL PROPERTY, SUCH AS ELECTRONIC CONFIDENTIAL COMPANY DOCUMENTS, DOES NOT CONSTITUTE *GOODS, WARES OR MERCHANDISE* WITHIN THE MEANING OF THE NATIONAL STOLEN PROPERTY ACT ("NSPA"), 18 U.S.C. § 2314?

## III. STATEMENT OF THE CASE:

Mr. Zhang worked for Company A as a computer systems manager. Indictment ¶ 2. On June 30, 2010, Mr. Zhang gave written notice that he was leaving Company A and that his last day would be July 6, 2010. Indictment ¶ 6. Two days before, Mr. Zhang allegedly copied confidential Company A information to his desktop computer. Indictment ¶¶ 7-8. The Government further alleges that between July 3, 2010 and July 4, 2010 Mr. Zhang copied Company A files onto his Company desktop computer. Indictment ¶¶ 10-11.

The Indictment states that on July 4, 2010 Mr. Zhang transferred these copied files to Server 1, and then from Server 1 to somewhere outside of the Company A network. Indictment ¶¶ 12, 14. Company A's Intellectual Property Policy provided that employees could only use proprietary information for Company purposes. Indictment ¶ 16. The policy prohibited copying, destroying, and misappropriating any of the Company proprietary information. *Id.*

On September 13, 2012, the Government filed a two-count indictment against Mr. Zhang, which charged him with Unauthorized Damage to a Protected Computer, in violation of 18 U.S.C. § 1030(a)(5)(A) and (c)(4)(A)(i)(I), and the NSPA, in violation of 18 U.S.C. § 2314. (Doc. 1).

On March 11, 2013, this Court designated this case complex upon motion by the Government, in which, Defendant joined. (Doc. 42). Mr. Zhang now files a Motion to Dismiss Count II of the Indictment for failure to state an offense under the NSPA.

## IV. ARGUMENT:

### A. <u>This Court should dismiss Count II of the Indictment because the confidential company documents downloaded by Mr. Zhang do not constitute *goods, wares, merchandise, securities, or money* within the NSPA.</u>

Count II (NSPA) of the Indictment fails because the confidential company files[1] allegedly stolen by Mr. Zhang do not constitute *goods, wares, or merchandise* under the NSPA. Indictment ¶¶ 13,16. Because federal crimes are "solely creatures of statute," *Dowling v. United States*, 473 U.S. 207, 213 (1985) (internal quotation marks omitted), a defendant may move to dismiss a count for failure to state an offense under the statute, Fed. R. Crim.P. 12(b)(3)(B). *See Russell v. United States*, 369 U.S. 749, 760-61 (1962). An indictment "fails to state an offense if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002).

The NSPA, "requires, first, that the defendant have transported *goods, wares, [or] merchandise* in interstate or foreign commerce; second, that those goods have a value of $5,000 or more; and, third, that the defendant know the same to have been stolen, converted or taken by fraud." *Dowling,* 473 U.S. at 214. (citations omitted) (internal quotation marks omitted). The company files Mr. Zhang allegedly downloaded were not *goods, wares, [or] merchandise*.

*Goods, wares, [or] merchandise* are "a general and comprehensive designation of such personal property or chattels as are ordinarily a subject of commerce." *United States v. Seagraves*, 265 F.2d 876, 880 (3d Cir. 1959) (quoting Black's Law Dictionary 823 (4th ed. 1951)). Thus, courts

---

[1] Mr. Zhang uses the terms "company files" and "company information" interchangeably throughout this Memorandum in order to reflect the terms used in the Indictment.

use a two-part test for identifying *goods, wares or merchandise* within the meaning of the NSPA. *United States v. Smith*, 686 F.2d 234, 241 (5th Cir. 1982) (interpreting *Seagraves*, 265 F.2d at 880). First, the item must be a tangible object in the nature of personal property or chattels. *Smith*, 686 F.2d at 241 ("Where no tangible objects were ever taken or transported, a court would be hard pressed to conclude that 'goods' had been stolen and transported within the meaning of § 2314"). Second, the item must "ordinarily be the subject of commerce." *Id.*; *see also In re Vericker*, 446 F.2d 244, 248 (2d Cir. 1971) (Even if an item constitutes personal property or chattels, it must be commonly bought and sold to come within the statute). In this case, the confidential company files in question were neither tangible objects nor ordinarily subjects of commerce.[2]

**1. <u>The NSPA's language, legislative history, and purpose as well as judicial precedent on its meaning dictate that it requires that the *goods, wares, or merchandise* be tangible.</u>**

The NSPA's language and history as well as its judicial interpretation impose a strict tangibility requirement. Statutory construction begins "with the language employed by Congress and the assumption that the ordinary meaning of that language accurately express the legislative purpose." *United States v. Albertini*, 472 U.S. 675, 680 (1985). "When assessing the reach of a federal criminal statute, [courts] pay close heed to language, legislative history, and the purpose in order strictly to determine the scope of the conduct the enactment forbids." *Dowling*, 473 U.S. at

---

[2] Although the files in question fail both the *tangible* and *subject to commerce* prongs of the *Seagraves* test, the Court only needs to find the files deficient as to one of the prongs in order for the NSPA not to apply.

213. Further, courts practice restraint and narrowly interpret federal crimes to pay "due respect for the prerogatives of Congress in defining federal crimes." *Id.* (citing *Williams v. United States*, 458 U.S. 279, 290 (1982)). "[W]hen choice has to be made between two readings of what Congress has made a crime, it is appropriate, before [the court] choose[s] the harsher alternative, to require that Congress has spoken in language that is clear and definite." *Dowling*, 473 U.S. at 214. The NSPA's history, Supreme Court and Third Circuit precedent, and decisions of other circuit courts of appeals, all lead to the conclusion that intangible property cannot be a *good, ware or merchandise* within the meaning of the statute.

To begin, the NSPA "was drafted at a time when computers, biotechnology, and copy machines did not even exist." *United States v. Hsu*, 155 F.3d 189, 194-95 (3d Cir. 1998). As such, subsequent case law has resisted the idea of stretching the scope of the statute to include intangible property. *United States v. Stafford*, 136 F.3d 1109, 1115 (7th Cir. 1998) (citations omitted) ("[G]iven the statute's age…and wording, and the principle that the definition of federal crimes is a legislative rather than a judicial function—a principle that places some limits on creative judicial interpretations of federal criminal statutes…we don't think the first paragraph of section 2314 will stretch this far."). For these reasons, courts have explicitly "decline[d] to stretch or update statutory words of plain and ordinary meaning in order to better accommodate the digital age." *United States v. Aleynikov*, 676 F.3d 71, 79 (2d Cir. 2012).

Reading the statute's plain language and reviewing previous NSPA cases, the Supreme Court has noted that cases brought under the NSPA "have always involved physical goods, wares, [or] merchandise...[and that]...[t]his basic element comports with the common-sense meaning of the

statutory language." *Dowling*, 473 U.S. at 216.[3] Following *Dowling* and the plain language of the statute, most courts have read *goods, wares and merchandise* in the NSPA to impose a tangibility requirement. *See, e.g.*, *Aleynikov*, 676 F.3d at 77 ("[w]e join other circuits in relying on *Dowling* for the proposition that the theft and subsequent interstate transmission of purely intangible property is beyond the scope of the NSPA."). In fact, courts of appeals consider the tangibility requirement has held that § 2314 does not apply to intangible property without physical form. *United States v. Brown*, 925 F.2d 1301, 1307 (10th Cir. 1991) (holding stolen source code to be outside the purview of § 2314 because the Government could not claim defendant took a physical object); *Stafford*, 136 F.3d at 1115 (holding stolen item to be outside the purview of § 2314 because it was merely information lacking any physical form); *United States v. Martin*, 228 F.3d 1, 13 (1st Cir. 2000) (holding that "intangible, purely intellectual property does not fall within the auspices of § 2314"). Hence, NSPA's plain meaning requires that the subject of the theft be a tangible object.

Congress also recognized the NSPA's limited scope by passing subsequent legislation. In fact, Congress's understanding that the NSPA only applied to thefts of physical items provided the

---

[3] The NSPA also requires that the physical nature of the property exist with the theft:

> This basic element comports with the common-sense meaning of the statutory language: by requiring that the "goods, . . . wares, [or] merchandise" be "the same" as those "stolen, converted or taken by fraud," the provision seems clearly to contemplate a physical identity between the items unlawfully obtained and those eventually transported, and hence some prior physical taking of the subject goods.

*Dowling*, 473 U.S. at 216.

impetus for the Economic Espionage Act ("EEA"). H.R. Rep. No. 788, 104th Cong., 2d Sess. 6-7 (1996), *reprinted in* 1996 U.S.C.C.A.N. 4021, 4025. In enacting the EEA, Congress stated its intent "to ensure that the theft of intangible information is prohibited in the same way that theft of physical items [is] protected." S. Rep., No. 104-359, 1996 WL 497065 (Leg. Hist.) at *15. Further, subsection (a)(2)(C) was added to the Computer Fraud and Abuse Act, 18 U.S.C. §1030, to "protect against the interstate or foreign theft of information by computer because Congress was concerned about the fact that electronically stored information is intangible, and it has been held that the theft of such information cannot be charged under more traditional criminal statutes such as [NSPA]." *United States v. Batti*, 631 F.3d 371, 376-77 (6th Cir. 2011). Following *Dowling* and *Brown*, Congress also could have amended the NSPA to expressly encompass intangible property, just as it amended the mail fraud statute to encompass intangible rights after *McNally v. United States*, 483 U.S. 350 (1987). However, it declined to do so. Consequently, the legislative history demonstrates the limits of the NSPA.

Accordingly, reading the statute narrowly and paying close heed to its language, legislative history, and purpose, the NSPA imposes a tangibility requirement. Moreover, judicial precedent from the Supreme Court, Third Circuit, and other circuits persuasively dictate this result. Therefore, this Court should find that an indictment charging a violation of the NSPA must allege that at the time *goods, wares, or merchandise* were stolen, the stolen item was in some tangible or physical form. Because the Indictment fails to do so, the Court should dismiss Count II against Mr. Zhang.

**2. <u>The confidential company files in this case were not tangible property within the meaning of the NSPA because the files were at all times electronic.</u>**

The files in question are intangible, intellectual property and thus are not *goods, wares, or merchandise* under the NSPA. As demonstrated above, the Indictment must establish some tangible form of the property in order to make out a NSPA violation. *See supra* Section IV(A)(1). Two recent United States Court of Appeals for the Second Circuit cases provide a persuasive framework for determining whether the theft of intellectual property constitutes a NSPA violation. *Compare United States v. Aleynikov*, 676 F.3d 71 (2012) *with United States v. Agrawal*, 2013 WL 3942204 (2d Cir. Aug. 1, 2013).

In June 2009, Sergey Aleynikov worked as the highest paid computer programmer of Goldman Sachs & Co. *Aleynikov*, 676 F.3d at 73-74. On his last day at Goldman, "Aleynikov encrypted and uploaded to a server in Germany more than 500,000 lines of source code" from Goldman's high-frequency trading system. *Id.* at 74. "After uploading the source code, Alyenikov deleted the encryption program as well as the history of his computer commands." *Id.* After returning home to New Jersey, Aleynikov downloaded the source code and copied the files to other computer devices. *Id.* Following his conviction for violations of the EEA and NSPA, Aleynikov appealed his conviction. Beginning its NSPA analysis, the Second Circuit noted that "by uploading Goldman's proprietary source code to a computer in Germany, Aleynikov stole purely intangible property embodied in a purely intangible format." *Id.* at 78. Continuing the court reasoned that because Aleynikov never assumed "physical control over anything when he took the source code,

and because he did not thereby "deprive Goldman of its use, Aleynikov did not violate the NSPA." *Id.* at 78-79. In the end, the court overturned both the EEA and NSPA convictions. *Id.* At 73.

By comparison, Samarth Agrawal worked for a French bank in the Southern District of New York and also had access to the computer code used to conduct high frequency securities trades. *United States v. Agrawal*, 2013 WL 3942204 *1 (2d Cir. Aug. 1, 2013). Unlike Aleynikov however, Agrawal printed the code onto thousands of sheets of paper and took them home to New Jersey. *Id*. Agrawal was also convicted and appealed to the Second Circuit. Distinguishing *Aleynikov*, the Second Circuit explained that "a defendant who transfers code electronically never assumes physical control over anything tangible." *Id.* at * 13 (citations omitted) (internal quotation marks omitted). "By contrast, a defendant such as Agrawal, who steals papers on which intangible intellectual property is reproduced, does assume physical control over something tangible as is necessary for the item to be a good . . . for purposes of the NSPA." *Id.* (citations omitted) (internal quotation marks omitted). In affirming Agrawal's conviction, the Second Circuit keenly emphasized that the goods in question must be tangible. *Id.* at *14.

In this case, the Indictment demonstrates that the confidential company files were intellectual property and never took the tangible form. First, the Indictment alleges Mr. Zhang stole the files "by downloading them from Company A's network to his Company desktop computer and then transferring them through [Server 1] to Internet storage sites that Zhang maintained in Sweden and Germany." Indictment ¶ 3. Additionally, the Indictment invokes Company A's Intellectual Property policy, which provided that the employees could only use propriety information for Company purposes. Indictment ¶ 16. Finally, the Indictment details how Mr. Zhang allegedly moved the files

through the company's network from the company's server to his company desktop to Server 1 to the Internet storage sites. Indictment ¶ ¶ 7-14. Mr. Zhang allegedly took all these actions from his desk at Company A while still employed with Company A. Indictment ¶¶ 7, 9. Hence, the Indictment illustrates that any alleged theft involved only intangible, intellectual property.

Moreover, nowhere in the Indictment does the Government state, nor even suggest, that the information ever took a physical form. Instead, the Government alleges that Mr. Zhang transferred electronic files over the internet from a network to a server. Given the plain meaning of these terms, the means of transfer alone necessarily implies that the information was not tangible.

Similar to Aleynikov, Mr. Zhang allegedly uploaded confidential company files in violation of a company policy to a server in Europe. Additionally, Mr. Zhang, like Alyenikov, never created a physical or tangible form of the information and did not cross states lines with that tangible form. By the same token, Mr. Zhang, at least at the time of the alleged theft, never transferred it to a portable storage device or printed it like Agrawal. Thus, like in *Aleynikov*, the decisive question in this case is whether the allegedly stolen files that were uploaded to servers in Germany and Sweden constituted stolen *goods, wares, or merchandise* within the meaning of the NSPA. They were not because Mr. Zhang never created a tangible or physical form, printed the information, or in any way created a tangible version of the property. As such, he cannot be held liable under § 2314.

In conclusion, the Indictment alleges only that the confidential company files were stolen in their native intangible form, transferred between company computers and servers, and eventually transmitted out of the country over the Internet. It never alleges that Mr. Zhang printed the files or in any way created a tangible version. The Indictment consequently fails to state an NSPA offense

because the specific facts alleged in the charging document fall outside of 18 U.S.C. §2314's purview. Thus, Count II of the Indictment should be dismissed.

**3. <u>This Court should dismiss Count II of the Indictment because the Government has not alleged that any market exists for the confidential company information.</u>**

In order to be considered *goods, wares or merchandise* an item must be ordinarily a subject of commerce. *Seagraves*, 265 F.2d at 880. "The intrinsic commercial aspect of an object or thing is key to determining whether it is ordinarily a subject of commerce." *United States v. Kwan*, No. 02 CR 241, 2003 WL 22973515, at *4 (S.D.N.Y. Dec. 17, 2003). Absent an obvious market the Government must prove the existence of one. *Id*. at *6. At this stage, the issue is whether the Government has alleged any market for the intangible company files. Here, the Government has not alleged any fact indicating the existence of a market for the intangible company information, nor has it alleged facts implying such an existence. Moreover, the Indictment fails to contain even a conclusory factual allegation that a market for the information in question exists. Therefore, the intangible company information allegedly misappropriated by Mr. Zhang does not constitute *goods, wares or merchandise* and does not fall under the purview of §2314.

If the information is either not tangible property or is not the subject of commerce, then it does not constitute *goods, wares or merchandise*. Here, the information fits neither category. If the Court, however, finds that only one prong of the two-part test fails, then the information is still not *goods, wares or merchandise*. Any information that is not *goods, wares or merchandise* is outside the purview of § 2314. Because Count II of the Indictment alleges a violation of § 2314, and since

the information in question is not *goods, wares or merchandise*, it should be dismissed from the Indictment.

## V. CONCLUSION:

For the foregoing reasons the Defendant, Yijia Zhang, respectfully requests that this Court grant Defendant's Motion to Dismiss Count II of the Indictment.

**BOYLE LITIGATION**

/s/ *K. Edward Raleigh*

**Dennis E. Boyle, Esquire**
Supreme Court I.D. No. 49618

**K. Edward Raleigh, Esquire**
Supreme Court I.D. No. 312229
4660 Trindle Road, Suite 200
Camp Hill, PA 17011
Phone: (717) 737-2430
Fax: (717) 737-2452
Email: deboyle@boylelitigation.com
keraleigh@boylelitigation.com

Counsel For: Yijia Zhang

Dated: September 19, 2013

**CERTIFICATE OF SERVICE**

I hereby certify that on the date listed below I electronically filed the foregoing with the Court using the CM/ECF system, which sent notification of such filing to the following person(s) at the following email address(es):

Michael Levy, Esquire
mike.levy@usdoj.gov

*/s/ Penny A. Rogers*
Penny A. Rogers, Senior Paralegal

Dated: September 19, 2013