IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| YIJIA ZHANG, | : | NO. 12-498 |
| defendant. | : | |

MEMORANDUM AND ORDER

AND NOW, this 16th day of October 2014, upon consideration of Defendant's Motion for Reconsideration and to Reopen Defendant's Motion for Pre-Trial Release and Revocation of Detention Order (Doc. No. 68), the Government's opposition thereto (Doc. No. 70), and the testimony and argument presented at the September 23, 2014 court proceeding, it is hereby ORDERED that the motion is GRANTED IN PART and DENIED IN PART. Defendant's Motion for Extension of Time to File Notice of Appeal (Doc. No. 69) is DENIED AS MOOT.

I.   Factual and Procedural Background

The defendant, Yijia Zhang, was arrested in the Northern District of California on September 26, 2012, and has been detained pending trial since that time. Zhang is charged with intentionally causing damage to a protected computer in violation of 18 U.S.C. § 1030(a)(5)(A) and § 1030(c)(4)(A)(i)(I). He is accused of damaging the server of his employer, the Vanguard Group, in an attempt to cover up his alleged theft of internal company documents. These documents allegedly included passwords to sensitive areas of Vanguard's network, information on the structure of the network, and confidential details on processing of financial transactions. (Tr. of Bond Appeal Video Hearing, October 9, 2012, at 33–34, Doc. No. 73.)  Zhang has allegedly admitted to transferring the files to servers in Germany and Sweden, though their ultimate disposition remains unknown. (Id. at 6.)

After his arrest, the defendant appeared before a magistrate in the Northern District of California and was ordered released on $250,000 cash bond. The government appealed that decision to this Court pursuant to the Bail Reform Act, 18 U.S.C. § 3145(a)(1), arguing that the defendant should be detained pending trial as a flight risk. (Doc. No. 5.) Following a video hearing, this Court on October 9, 2012, modified the bail amount to $1 million but left the defendant's other conditions of release unchanged. (Doc. No. 12.) On November 15, 2012, the government again moved to detain defendant based upon newly received information that he had lost his job and no longer had a place to live. (Doc. No. 18.) This Court granted the government's motion and ordered the defendant detained on November 20, 2012. (Doc. No. 22.) After several continuances requested by the defendant so that he could obtain private counsel, this Court once again held a detention hearing for Zhang and denied his motion to reconsider the detention order on February 27, 2013. (Doc. No. 40.)

Zhang's prior counsel filed a motion to dismiss Count II of the indictment on September 19, 2013 (Doc. No. 45), which motion was granted on January 14, 2014. (Doc. No. 49.) The defendant's attorney moved to withdraw on February 6, 2014 due to "irreconcilable" personal conflicts with the defendant. (Doc. No. 50.) That request was granted on March 17, 2014, and defendant was given 14 days to obtain new counsel. (Doc. No. 54.) Present counsel, Michael Engle, Esquire, filed an appearance on March 25, 2014 (Doc. No. 57), and filed a renewed motion to revoke Zhang's detention order on May 23, 2014. (Doc. No. 58.) The Court held two days of hearings on that motion at which counsel discussed various difficulties Zhang had experienced with reviewing the electronic discovery provided by the government while incarcerated at the Federal Detention Center. This Court subsequently issued an order on July 14, 2014, denying defendant's motion and ordering him to remain detained pre-trial. (Doc. No. 65.)

The defendant filed a motion for reconsideration (Doc. No. 68), on which a hearing was held on September 23, 2014.

At the hearing, the defendant offered the testimony of Omar Tirado, his proposed third party custodian. Tirado was acquainted with Zhang when he attended college until 1999, but had not had contact with Zhang between 1999 and 2013. Tirado offered his home and retirement account as surety for Mr. Zhang's appearance, and Zhang's attorney proffered that Zhang offered his own retirement account as surety as well. The Court held its decision under advisement, and now rescinds Zhang's detention order and imposes conditions of release.

II.     Legal Standard

The Bail Reform Act of 1984 governs the issue of pretrial detention. Specifically, we must determine whether any "condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The government seeks continued detention only on the ground of risk of flight, and not the defendant's dangerousness to other persons or to the community. The government must prove risk of flight by a preponderance of the evidence. United States v. Himler, 797 F.2d 156, 161 (3d Cir. 1986). In making the decision whether to detain a defendant prior to trial, the court is to consider the following factors:

> "(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including--
>     (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

3

>   (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>   (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

In addition, pretrial detention of the length experienced by the defendant here raises constitutional questions of due process. See United States v. Accetturo, 783 F.2d 382, 388 (3d Cir. 1986) ("[A]t some point due process may require a release from pretrial detention or, at a minimum, a fresh proceeding at which more is required of the government than is mandated by section 3142."). In evaluating an extended detention, the court considers "such additional factors as the length of the detention that has in fact occurred, the complexity of the case, and whether the strategy of one side or the other has added needlessly to that complexity." Id.

III. Analysis

1. Nature and Circumstances of the Offense

Defendant is charged with causing over $5000 in damage to a protected computer, a charge carrying a statutory maximum of five years in prison. 18 U.S.C. § 1030(c)(4)(A)(i)(I). The government alleges that the defendant copied thousands of confidential files from the server of his employer, The Vanguard Group, a financial institution with approximately $3 trillion in managed assets, and transferred them to storage sites in Germany and Sweden. The files contained sensitive information including usernames and passwords and structural details of Vanguard's secure internal network. It is unknown what happened to the files after they were transferred to Europe. After Zhang copied this information, critical files were deleted from a Vanguard "network quality of service" server, causing the server to fail.

This crime does not carry a presumption of dangerousness. Nonetheless, the circumstances of the offense are quite serious. Zhang is accused of copying massive numbers of secure files from his employer's computer network and sending them abroad, causing damage to the employer's network in the process. Zhang is a highly skilled network engineer and is accused of abusing his skill and experience to steal highly sensitive information from a large financial firm. Though this case has been pending for two years, much remains unknown about why these files were taken and what ultimately happened to them. Given the sensitive nature of the alleged crime and the remaining unknown facts in the case, this factor weighs in favor of continued detention.

2. Weight of the Evidence

The government helpfully provided a "roadmap" to its evidence in its opposition to Zhang's motion for release, in an effort to expedite new counsel's review of the discovery materials. (Doc. No. 59.) The government's filing shows a strong case on the merits. It alleges that entry logs and video surveillance show Zhang entering the property of his employer on July 3 and July 4, 2010. The server in question stopped communicating on July 4, 2010, four days after Zhang submitted his resignation from the company. The server was later found to be seriously damaged, "like an automobile with its engine missing." The government also proffers evidence that thousands of sensitive files were copied to Zhang's desktop and laptop computers and were sent abroad to servers in Germany and Sweden. Zhang allegedly admitted to transferring the files and to being present at the Vanguard office on the weekend of July 3 and 4, 2010. He also admitted to deleting files from the server, though he claims it was for the purpose of removing an unauthorized program that he had previously installed. The government's

position was weakened somewhat by the dismissal of one of the two counts of the indictment, but the evidence on the remaining count appears strong.

   3. History and Characteristics of the Defendant

Zhang has no prior criminal record, and therefore no record of appearance or failure to appear. His pretrial report from 2012 indicated that he had $476,000 in assets, though that number has likely decreased during Zhang's detention as he is paying for private counsel. He is a citizen of the People's Republic of China and a legal permanent resident of the United States. He entered the United States in 1995 and has lived here continuously since that time, last visiting China in 2001. He speaks German, English and Chinese. He remains in contact with his parents in China and has sent them substantial sums of money in the past. Importantly, China has no extradition treaty with the United States. If Mr. Zhang were to return to China while on pretrial release, there is likely little chance that he could ever be returned to the United States for trial.

The defendant has no pre-existing, and limited current, community ties in the Eastern District of Pennsylvania. Despite residing in the district from approximately 1995 to 2010, Zhang has no family or friends in the area. He owns no property, not even a car. In other words, Zhang lived in this district for fifteen years and left no mark.

 At the detention hearing, Zhang offered testimony from a former college acquaintance, Omar Tirado. Tirado attended college with the defendant in the late 1990s and had no contact with him until receiving a letter from Zhang in 2013 asking Tirado to become his third party custodian. Tirado offered at the hearing to act as third party custodian and additionally to post his

home and retirement account as surety for Zhang's appearance at trial.[1] On examination by the Court, it became clear that Tirado lacked a substantial relationship with the defendant.[2] Despite being asked to post his home and retirement account as surety for Zhang, Tirado was unaware of Zhang's substantial assets which included a personal retirement account.[3] Their relationship was nonexistent for over a decade and, most importantly, was revived by Zhang for the purpose of securing a potential third party custodian. (Tr. of Detention Hr'g 60–64.)

The purpose of appointing a third-party custodian is to influence the defendant not to flee. In order to exercise this "moral suasion," the custodian must have a substantial relationship

---

[1] Tirado offered the equity in his newly-purchased family home and the entirety of his retirement account, with a balance of $149,000, representing his life savings. (Tr. of Detention Hr'g, Sept. 23, 2014, at 72.)

[2] Tirado testified that the bulk of his relationship with Zhang consisted of conversations at their place of work and collaboration on class assignments. (Tr. of Detention Hr'g 52–56.)

[3] "THE COURT: Okay. Good. Let me just ask you this. So did he tell you that when he was interviewed by pretrial services in California that he had $476,000 in assets?
THE WITNESS: No. That's a lot.
THE COURT: I agree. But he didn't tell you that?
THE WITNESS: No.
THE COURT: And so as you're having these conversations about your putting up your house, right, the house that you and your lady bought, where you're going to raise your family –
THE WITNESS: Um-hmm.
THE COURT: – he didn't tell you that he had – at the moment that he went in jail, he had almost half a million dollars to his name?
THE WITNESS: No, sir.
. . .
THE COURT: Okay. Are you troubled by the fact that he didn't tell you about the resources that he had?
THE WITNESS: Not necessarily, sir."
(Tr. of Detention Hr'g 79–80, 87.)

with the defendant. See United States v. Hammond, 204 F.Supp.2d 1157, 1166 (E.D. Wis. 2002) "Before allowing release on bail, the court may seek to assure itself that proposed posters or sureties are financially responsible and have "moral suasion" over the defendant."); United States v. Batista, 163 F.Supp.2d 222 (S.D.N.Y. 2001) (listing factors to evaluate a potential surety's capacity for "moral suasion" as including "the strength of the tie between the suret[y] and defendant (i.e. family or close friend, close or estranged), the defendant's roots in the community, and the regularity of contact between suret[y] and defendant"); United States v. Melville, 309 F.Supp. 824, 828 (S.D.N.Y. 1970) (analogizing a third-party surety to a "character witness at a trial"). Tirado simply does not have the kind of relationship with Zhang that would make him a meaningful third-party custodian. After observing the parties, we have little confidence in the Zhang/Tirado relationship, particularly in Tirado's ability to exercise "moral suasion" over Zhang. If anything, Zhang exercises influence over Tirado. Tirado remains willing to post the entirety of the financial assets he has acquired in his lifetime to secure the release of a person he had not seen or spoken to in fifteen years who, in making this request, failed to disclose material information about his significant assets.

Overall, despite residing in the Eastern District of Pennsylvania for nearly fifteen years, the defendant has very few community contacts, is a citizen of a foreign country with no extradition treaty with the United States, and likely retains substantial assets. The proposed surety barely knows the man and does not appear to require complete candor in their communications. These circumstances suggest a substantial risk that he will fail to appear for trial.

We have little confidence that Tirado would be able to serve as an effective third party custodian and we lack comfort that Tirado will be able to assure Zhang's appearance at trial.

Only substantial cash bail can address our concerns and for this reason we impose a $500,000 cash bond, with release subject to the additional conditions stated at the end of this order. This amount is sufficient to provide an effective deterrent to flight without the community contacts we would otherwise require.

4. Danger to Other Persons and the Community

It is conceded that Zhang has no criminal history and is accused of a nonviolent crime. He is not a risk to others or to the community as a whole.

5. Length of and Reasons for Delay

Zhang has now been detained pretrial for two years. This is undoubtedly an unusually long period of pretrial detention, and requires careful examination to ensure that continued detention abides by due process. But the length of detention alone is not dispositive as to the due process inquiry. Accetturo, 783 F.2d at 388 ("Because due process is a flexible concept, arbitrary lines should not be drawn regarding precisely when defendants adjudged to be flight risks or dangers to the community should be released pending trial."). Instead, the court must consider whether the delay resulted from the inherent complexity of the case, or whether either the government or the defense is primarily responsible for the delay. Id.

The case against Zhang is complex and involves a significant volume of discovery material. Indeed, problems with reviewing discovery were the Court's main concern at Zhang's prior detention hearing. However, based upon counsel's representations at the September 23, 2014 hearing, it appears that most of the discovery review issues have been resolved and the few remaining issues are well on the path to resolution.

It is indisputable that the defendant is responsible for most, if not all, of the delay in trying this case. The case was almost ready to proceed to trial in early 2014, when Zhang fired

his lawyer, nearly eighteen months after indictment. Since then, new counsel has taken a substantial period of time to become familiar with the admittedly voluminous discovery and has yet to hire an expert or experts for trial. The government stated at the September 23 hearing that it would be ready to try the case in approximately six weeks, while the defense asked for a trial date over six months in the future. The date for trial has now been set, pursuant to defense counsel's request, for March 30, 2015. The responsibility of the defendant for the pretrial delay in this case distinguishes it from others in which courts have found the period of pretrial detention to violate due process. Cf. United States v. Theron, 782 F.2d 1510 (10th Cir. 1986) (four-month detention violates due process where delay was entirely attributable to other defendants); United States v. Gonzales Claudio, 806 F.2d 334, 342 (2d Cir. 1986) (fourteen-month detention violates due process where prosecution is responsible for a substantial portion of the delay); United States v. Zannino, 798 F.2d 544, 549 (1st Cir. 1986) (sixteen-month detention does not violate due process where "the government has done all it could to bring [the defendant] to trial expeditiously"). Given these facts, we cannot conclude that the defendant's continued detention violates due process.

IV. Conclusion

The defendant continues to present a substantial risk of nonappearance. However, the Bail Reform Act "does not require that the risk be zero, but that conditions imposed 'reasonably assure' appearance." United States v. Madoff, 586 F. Supp. 2d 240, 249 (S.D.N.Y. 2009). We do not believe Zhang's proposed conditions are sufficient to assure his appearance at trial, but conclude that the imposition of a combination of conditions will reasonably assure Zhang's appearance at trial.

Accordingly, it is hereby ORDERED that the following conditions of release are imposed:

1. The defendant shall post a bond of Five Hundred Thousand Dollars ($500,000), the entirety to be secured by cash.
2. Upon the payment of bond, the defendant shall be released to the home of Omar Tirado, 740 North 5th Street, Lancaster, PA.
3. The defendant shall not travel outside the Eastern District of Pennsylvania.
4. The defendant shall surrender all passports and visas to Pretrial Services and shall not apply for any passports or other travel documents.
5. The defendant shall be subject to location monitoring via a Global Positioning System device and shall be allowed to leave the home of Mr. Tirado with Pretrial Services authorization for employment, medical, and legal reasons only. Zhang shall pay all costs associated with electronic monitoring.
6. The defendant shall not change residence without prior approval of Pretrial Services.
7. The defendant shall not travel within 100 yards of any places of egress, including airports, shipping ports, interstate train stations, or any foreign embassies or consulates, without the prior approval of Pretrial Services for legal purposes only.

BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.